

# SUPREME COURT OF MISSOURI
## en banc

ANTHONY CARUTHERS,        )
                                   )
                 Relator,      )
                                   )
v.                                      )        No. SC97469
                                   )
THE HONORABLE WENDY    )
WEXLER-HORN, JUDGE OF THE    )
CIRCUIT COURT OF THE COUNTY    )
OF ST. FRANCOIS, 24TH JUDICIAL    )
CIRCUIT,                          )
                                   )
             Respondent.    )

*Opinion issued April 30, 2019*

## ORIGINAL PROCEEDING IN PROHIBITION

Anthony Caruthers seeks a writ of prohibition to prevent the circuit court from ordering him to submit to a mental evaluation pursuant to chapter 552.[1] Because Caruthers has not asserted he is not guilty by reason of mental disease or defect and the circuit court lacks reasonable cause to question his competence to stand trial, chapter 552 does not

---

[1] Statutory references are to RSMo 2000, as amended.

authorize the circuit court to order the department of mental health to conduct a psychiatric evaluation of Caruthers. The preliminary writ of prohibition is made permanent.

## Factual and Procedural Background

Caruthers is charged with first-degree murder, second-degree burglary, armed criminal action, tampering, resisting arrest, and escape. Caruthers endorsed Dr. Stacie Bunning as an expert witness. Caruthers disclosed he intends to call Dr. Bunning to testify at trial that he suffered from diminished mental capacity, which rendered him incapable of deliberation at the time of the alleged murder.

Upon learning of Caruthers' endorsement of Dr. Bunning, the State sought an order for a mental evaluation pursuant to § 552.020. The State later amended its request to seek an order pursuant to § 552.015 and § 552.020. The circuit court granted the State's motion, compelling Caruthers to submit to a psychiatric evaluation and ordering the department of mental health to conduct the evaluation pursuant to § 552.015 and § 552.020. The circuit court's order also directed the department to file a written report with the court to include detailed findings of the evaluation, state an opinion as to whether Caruthers had a mental disease or defect, and state an opinion as to whether Caruthers, as a result of mental disease or defect, lacked a state of mind which is an element of the charged offense.

Caruthers petitioned the court of appeals for a writ of prohibition. The court of appeals issued a preliminary writ, dispensed with further briefing and oral argument

2

pursuant to Rule 84.24(i), and subsequently made the writ permanent. This Court ordered transfer pursuant to Rule 83.04.[2]

## Standard of Review

This Court has jurisdiction to issue original remedial writs. MO. CONST. art. V, § 4. This Court may issue a writ of prohibition:

> (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014). A writ of prohibition is appropriate to prevent a circuit court from ordering a defendant to undergo a mental evaluation concerning the defendant's "mental state at the time of alleged criminal conduct without a plea of not guilty by reason of mental disease or defect." *State ex rel. Proctor v. Bryson*, 100 S.W.3d 775, 778 (Mo. banc 2003) (emphasis omitted).

## Analysis

Caruthers seeks a writ of prohibition, arguing the circuit court exceeded its authority by ordering him to undergo a mental evaluation pursuant to chapter 552. The State argues § 552.015 and § 552.020 authorize the circuit court to order a mental evaluation to determine whether Caruthers suffered a mental disease or defect that rendered him incapable of deliberating at the time of the alleged offense. But this authority is not found in chapter 552.

---

[2] References are to Missouri Court Rules 2018.

Section 552.015 does not authorize the circuit court to order a mental evaluation. Rather, this section merely prescribes when evidence of a defendant's mental disease or defect is admissible in a criminal prosecution. *See* § 552.015. Section 552.020, on the other hand, does authorize the circuit court to order the department of mental health to conduct psychiatric evaluations of criminal defendants, but only in two limited circumstances.

First, the circuit court may order an evaluation when the court "has reasonable cause to believe that the accused lacks mental fitness to proceed." § 552.020.2. This subsection authorizes the circuit court to order an evaluation when the court has reasonable cause to question a defendant's present ability to "rationally consult with counsel and the court and understand[] the proceedings against him." *State v. Hunter*, 840 S.W. 2d 850, 863 (Mo. banc 1992). In other words, § 552.020.2 authorizes the circuit court to order a mental evaluation to determine whether a defendant is competent to stand trial. *Id.*; *see also Edwards v. State*, 200 S.W.3d 500, 519 (Mo. banc 2006) ("A defendant is competent if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ….") (internal quotations omitted). The purpose of the evaluation authorized by this subsection, however, is limited to determining whether the defendant is currently competent and "does not allow the court to order an examination as to the mental capacity of [the defendant] at the time of the alleged criminal conduct." *Proctor*, 100 S.W.3d at 777. Because the State does not allege, nor is there any evidence in the record, that Caruthers currently lacks the mental fitness to proceed, the circuit court was not authorized to order a mental health evaluation pursuant to § 552.020.2.

4

Second, the circuit court may order an evaluation when "the accused has pleaded lack of responsibility due to mental disease or defect." § 552.020.4. This subsection authorizes the circuit court to order an evaluation when the defendant intends to rely on the defense known colloquially as "NGRI." *State v. Walkup*, 220 S.W.3d 748, 754 (Mo. banc 2007). This provision, however, does not authorize the circuit court to order an evaluation when the defendant intends to rely on diminished capacity, a defense separate and distinct from NGRI. *See Proctor*, 100 S.W.3d at 777-78; *see also Walkup*, 220 S.W.3d at 754.

Although frequently confused, NGRI and diminished capacity are very different defenses. *See Walkup*, 220 S.W.3d at 754. The NGRI defense is available if a person, as a result of mental disease or defect, "was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct." § 552.030.1; *see also* § 562.086.1. The defense of NGRI "injects into the case an issue on which defendant has the burden of proof," and "[i]f defendant succeeds on his affirmative defense, he is absolved of criminal responsibility." *Walkup*, 220 S.W.3d at 756. On the other hand, "[a] diminished capacity defense, if successful, does not absolve the defendant of responsibility entirely, but makes him responsible only for the crime whose elements the state can prove." *Id.*

The defense Caruthers seeks to advance in this case will not absolve him of all criminal responsibility. Rather, Caruthers disclosed he intends to call Dr. Bunning to testify at trial that he suffered from a mental disease or defect that rendered him incapable of deliberation at the time of the alleged murder. Caruthers is not asserting the affirmative defense of NGRI, which would absolve him of all criminal responsibility, but merely seeks to contest the State's evidence that he deliberated before the homicide, which is an element

5

of the pending first-degree murder charge. Because Caruthers intends to advance a diminished capacity defense rather than NGRI, the circuit court exceeded its authority by ordering a Chapter 552 psychiatric evaluation.

Additionally, to rely on NGRI as a defense, "the defendant [must] comply with special notice provisions." *Id*. Pursuant to § 552.030,[3] a defendant must plead NGRI or give written notice of his intent to advance the defense. Caruthers did not plead NGRI or give written notice of his intent to rely on the NGRI defense. Rather, his notice stated only that Dr. Bunning would testify, and her reports would show, Caruthers was incapable of deliberating at the time of the alleged murder. The State contends this is functionally equivalent to written notice that Caruthers intended to rely on NGRI as a defense, but, as this Court explained in *Walkup*, "'not guilty by reason of mental disease or defect excluding responsibility' (NGRI) and 'diminished capacity' … are separate doctrines." 220 S.W.3d at 754. After all, lacking the mental capacity to commit an element of an offense may result in guilt of a lesser-included offense and does not absolve a defendant of criminal responsibility altogether.

---

[3] Section 552.030.2 states in pertinent part:
> Evidence of mental disease or defect excluding responsibility shall not be admissible at trial of the accused unless the accused, at the time of entering such accused's plea to the charge, pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty, … the accused files a written notice of such accused's purpose to rely on such defense.

As explained above, § 552.020 limits a circuit court's authority to order a psychiatric evaluation only when the court either: (1) has cause to believe "a defendant lacks the capacity to understand the proceedings or lacks the ability to assist counsel in the defense;" or (2) when the defendant properly asserts NGRI. *Proctor*, 100 S.W.3d at 777. "Absent from both sections is language allowing the trial court to order a psychiatric examination concerning mental state at the time of alleged criminal conduct *without* a plea of not guilty by reason of mental disease or defect." *Id*. at 777-78. The law, therefore, is clear that § 552.020 does not authorize the circuit court to order a mental evaluation when the defendant intends to rely on diminished capacity or any other defense to which the defendant's mental state may be relevant, other than NGRI. *See Walkup*, 220 S.W.3d at 756.

Furthermore, the circuit court's order directs the department of mental health to prepare a report stating an opinion as to whether Caruthers, due to mental disease or defect, lacked a state of mind that is an element of the charged offense. But § 552.020 does not authorize the circuit court to order the department to provide such an opinion. Rather, the statute authorizes the circuit court to order the department to prepare a report containing:

> (1) Detailed findings;
> (2) An opinion as to whether the accused has a mental disease or defect;
> (3) An opinion based upon a reasonable degree of medical or psychological certainty as to whether the accused, as a result of a mental disease or defect, lacks capacity to understand the proceedings against him or to assist in his own defense;
> (4) A recommendation as to whether the accused should be held in custody in a suitable hospital facility for treatment pending determination, by the court, of mental fitness to proceed; and

7

(5)  A recommendation as to whether the accused, if found by the court to be mentally fit to proceed, should be detained in such hospital facility pending further proceedings.

§ 552.020.3.  If the defendant pleads NGRI or gives written notice of his intent to rely on NGRI as a defense, in addition to the above contents, chapter 552 also authorizes the circuit court to order the department to create a report stating

an opinion as to whether at the time of the alleged criminal conduct the accused, as a result of mental disease or defect, did not know or appreciate the nature, quality, or wrongfulness of his or her conduct or as a result of mental disease or defect was incapable of conforming his or her conduct to the requirements of law.

§ 552.020.4.  Accordingly, there is nothing in the statute authorizing the circuit court to order the department of mental health to conduct a psychiatric evaluation and give an opinion as to whether Caruthers lacked the state of mind that is an element of the charged offense.[4]

**Conclusion**

Because the circuit court exceeded its authority by ordering Caruthers to undergo a mental evaluation pursuant to chapter 552 when he intended to rely only on the diminished capacity defense, the writ of prohibition is made permanent.

_____
W. Brent Powell, Judge


All concur.

---

[4]  This Court takes no position on whether the rules of criminal discovery would authorize the circuit court to order a mental evaluation in this circumstance.