Norvel Ray PAYNE, Respondent,

v.

ST. LOUIS GRAIN CORP., Respondent,

and

Commercial Union Insurance
Co., Appellant,

and

Westchester Fire Insurance
Co., Respondent.

No. 38705.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Dec. 20, 1977.

Motion for Rehearing and/or Transfer
Denied Feb. 14, 1978.

Robert R. Schwarz, St. Louis, for appellant.

George D. Chopin, St. Louis, Alfred Hoffman, Columbia, Edward M. Vokoun, St. Louis, for respondents.

DOWD, Judge.

A workmen's compensation case involving a dispute as to coverage by two insurance carriers. St. Louis Grain Corporation, the employer, was insured by two valid workmen's compensation policies. One was with Westchester Insurance Company (hereinafter Westchester) which carried workmen's compensation insurance coverage on any injuries construed to be compensable under the Illinois Workmen's Compen-

sation Act. The other was an assigned risk workmen's compensation policy with Commercial Union Insurance Company (hereinafter Commercial) for injuries compensable under the Missouri Workmen's Compensation Law. Appellant Commercial Union appeals from the finding below that it was the insurer of the risk which occurred in East St. Louis, Illinois and resulted in claimant's injury.

Claimant Norvel Ray Payne resided in the City of St. Louis in October of 1973. A friend who worked for St. Louis Grain Company suggested that Payne go to Elevator A on East Grand in the City of St. Louis to obtain employment. At the office in St. Louis Payne spoke to a Mr. George Spafford, the general superintendent, and there filled out a job application. Spafford told Payne he would call him at home if he needed him, and that evening Spafford called Payne and told him to meet him at the East St. Louis elevator the following day. Payne met Spafford in East St. Louis that day and started working. His work consisted of cleaning the area and greasing machines.

On October 12, Payne was working at the same elevator in East St. Louis, cleaning out bins. He fell a distance of 40–50 feet, hit his head against the concrete sloped wall of the bin, lost consciousness, and was dragged out from the bin.

Following a hearing before the Division of Workmen's Compensation, the Referee made 4 findings: 1) claimant was hired in Missouri, 2) the insurance policy of Commercial included coverage for this injury notwithstanding the fact that it occurred in Illinois, 3) the employee was entitled to an award for disability in the amount of $12,500 due from Commercial, and 4) Westchester, which also insured St. Louis Grain Corporation, was to be reimbursed by Commercial for the $5,208.05 that it mistakenly paid claimant Payne in temporary benefits and medical expenses.

The Industrial Commission affirmed the referee's finding in all respects except disallowed the reimbursement, finding that neither the referee nor the commission had the power to make such an order.

Upon appeal to the Circuit Court of the City of St. Louis, the Commission's award was affirmed and modified by adding to the award the sum of $3,166.85 for medical aid for the employee.

Respondents Westchester and Norvel Payne both move that we dismiss this appeal. Payne and Westchester assert that appellant Commercial has failed to comply with Supreme Court Rule 84.04(c), because its brief does not contain "a fair and concise statement of the facts relevant to the questions presented for determination without argument." Westchester alone also claims appellant is in violation of Rule 84.04(h) because the argument portion of his brief does not contain "specific page references to the transcript on appeal." This motion is denied.

■ However, this court concludes that four of appellant's points relied on preserve nothing for our review. We dismiss these four points.[1]

■ The first remaining reviewable point concerns appellant's claim that it is not liable for the employee's award because its policy specifically excluded coverage of any accident occurring outside Missouri. Before discussing this issue, we point out that our standard of review is limited to surveying the whole record to see if there is competent and substantial evidence to support the decision of the Commission. We can set aside their ruling only if it is clearly contrary to the overwhelming weight of the evidence. *Deatherage v. Churchill Truck Lines, Inc.*, 469 S.W.2d 660, 661[2] (Mo.App. 1971).

Section 287.110(2) states, inter alia, that Missouri Workmen's Compensation Law applies to "all injuries received and occupational diseases contracted *outside* of this state under *contract of employment made* in this state." (Emphasis added). And the Commercial insurance policy in effect at the time of the injury specifically incorporated Missouri Workmen's Compensation Law,[2] as it was bound to do by our law, Section 287.310.[3]

Accordingly, if the finding of the commission that the contract of employment was made in Missouri is supported by competent and substantial evidence, Payne is entitled to receive benefits from Commercial for the Illinois accident.

■ The test of determining where the relationship of employee and employer was created involves the intention of the parties as evidenced by their acts and conduct, the

1. Rule 84.04(d) requires an appellant, in his points relied on, to state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. The rule further states that setting out only abstract statements of the law without showing how they are related to an action of the trial court is a failure to comply with the rule. The defective points read as follows:

1. "The Employee Failed to Sustain the Burden of Proof that Missouri Jurisdiction is applicable."

2. "The Missouri Division of Workmen's Compensation is Without Jurisdiction to Make an Award to the Employee in this Instance and the Evidence Shows That Said Claim is Within the Jurisdiction of the Division of Workmen's Compensation of Illinois."

3. "The 'Other Insurance Clause' Found in Both Polices Apply (sic). The Westchester Fire Insurance Company Specifically Insured the Risk of Injury to Employees at the Illinois Location and Is Obligated to Pay the Benefits Therefor in Any Jurisdiction Arising out of That Operation."

4. "The Westchester Fire Insurance Company is Estopped to Deny Coverage Under Its Policy in Payment of an Award Made to the Employee."

All of these points are mere abstract statements of the law and provide nothing for review. *Middleton v. Meramec Mining Co.*, 545 S.W.2d 679 (Mo.App.1976); *Kellin v. ACF Industries, Inc.*, 528 S.W.2d 533 (Mo.App.1975). In addition, the points are not reviewable because they do not specify what the trial court did that is claimed to be erroneous or state wherein and why the challenged action is deemed to be error. *Long v. Lincoln*, 528 S.W.2d 512, 513[2] (Mo.App.1975).

2. The policy reads, "Coverage A of this policy applies to the Workmen's Compensation law and any occupational disease law of each of the following states: MISSOURI."

3. Section 287.310 states that every policy of insurance against liability under this chapter "shall contain an agreement that the insurer accepts all of the provisions of this chapter . . . ."

nature of the business, the situation of the parties and all the facts and circumstances. *Hall v. Denver-Chicago International Inc.*, 481 S.W.2d 622, 625 (Mo.App.1972). Here several facts are significant in determining where the contract was made. These significant facts include: 1) St. Louis Grain had been strictly a Missouri operation until the very week that Payne began work, when it bought the East St. Louis elevator and for the first time began doing business in Illinois, 2) Norvel Payne applied for the job in Missouri by speaking with the supervisors at the Missouri office in St. Louis and filling out the job application there, 3) Superintendent George Spafford accepted Payne's application in St. Louis, and told Payne he would call him if he needed him. That night he called Payne at Payne's home in St. Louis and told him to begin work the following day in East St. Louis. Pursuant to Spafford's telephone call, Payne reported for work the following day in East St. Louis. Based on all the facts we believe the finding by the commission that Payne was hired in Missouri was supported by competent and substantial evidence. See, *Daggett v. Kansas City Structural Steel Co.*, 334 Mo. 207, 65 S.W.2d 1036 (1933); *Thacker v. Massman Construction Co.*, 247 S.W.2d 623, 629 (Mo.1952).

The next preserved point is that the circuit court erred in amending the award of the commission by adding to the award to employee the sum of $3,166.85 for medical aid. It is undisputed that Westchester paid $2,041.20 for the employee Payne's temporary total disability and $3,166.85 for his medical expenses, under the impression that they were liable for these expenses. The referee determined that Commercial was to reimburse Westchester in the amount of $5,208.05. The commission found the order of reimbursement to be erroneous because not within the authority of the referee or the commission, based on *Harris v. Pine Cleaners*, 296 S.W.2d 27, 30 (Mo. banc 1956), but they affirmed the referee's determination in all other respects.

The employee moved the commission to modify its award by granting him $3,166.85 for his medical expenses, or to rehear the case.

The commission responded by informing him that the case had been appealed to the Circuit Court of St. Louis and the commission no longer had jurisdiction over the matter. Claimant thereafter filed his motion in the Circuit Court, asking the court to modify the commission's award in the amount of $3,166.85. The Circuit Court granted the motion.

Section 287.490(1) states that "The final award of the Commission shall be conclusive and binding unless either party shall . . . appeal to the Circuit Court . . . The court, on appeal, shall review only questions of law and modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

. . . . .

3) That the facts found by the commission do not support the award."

 Therefore, the statute specifically allows a modification of the award by the court. *Baer v. City of Brookfield*, 366 S.W.2d 469, 471[5] (Mo.App.1963). In this case because the facts found by the commission supported the award for disability and medical care, the trial court properly modified the award to include payment for medical care. If the award was not so modified, the employee might later be found liable to Westchester in an ancillary action for the money Westchester paid him for medical expenses, when Westchester believed it was liable. If the employee is forced to reimburse Westchester, his total award received from Commercial will be reduced, and Commercial will have avoided payment for this amount.

The Circuit Court's modification was to correct what must have been an oversight on the part of the commission, since it is clear that the commission was intending to compensate employee Payne for all expenses incident to his injury.

 The final reviewable point raised is that it was error to allow the respondent's attorney to continue to represent Westches-

ter arguing that the representation was in conflict with respondent's attorney's prior posture of representing St. Louis Grain, the insured employer.

It appears to us that appellant Commercial has no standing to raise this issue. "The objection that an attorney is disqualified by reason of his representing adverse interests is available only to those as to whom the attorney in question sustains, or has sustained, the relation of attorney and client." 7 C.J.S. Attorney & Client § 47 at 826. Although Missouri courts have not ruled on this issue, other jurisdictions have, and the above cited rule has been characterized as the majority or general rule. See, e. g., *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88[3] (5th Cir. 1976); *Murchison v. Kirby*, 201 F.Supp. 122, 123[1] (S.D.N.Y.1961); *Otis & Co. v. Pennsylvania R. Co.*, 57 F.Supp. 680, 684[4] (E.D.Pa. 1944).[4]

Of course, there may be narrow exceptions to this general rule, such as when the conflict of interest is manifest and glaring, so that the court will be confronted with a plain duty to act. *In re Yarn Processing Patent Litigation*, supra, 530 F.2d at 89.

Commercial does not offer to explain how it was injured by the alleged conflict of interest, other than to say "said representation was prejudicial to all the parties." However, St. Louis Grain, the alleged victim of this alleged conflict of interest, maintained at the hearing that it did *not want* respondent's attorney excluded, but on the contrary wanted him to remain and represent *it* in the event that the referee determined that the accident *was* compensable under the Illinois Workmen's Compensation Act.

4. Other jurisdictions following the majority rule are: *Riley v. Bradley*, 252 Ala. 282, 41 So.2d 641, 644[2], 645[7] (1948); *State v. Garaygordobil*, 89 Ariz. 161, 359 P.2d 753, 755[1] (1961); *Van Veen v. Van Veen*, 213 Iowa 323, 238 N.W. 718, 725[17] (1931); *Davis v. Poelman*, 178 So.2d 306, 311[10] (La.App.1965); *Wenzel v. Werch*, 256 Wisc. 47, 39 N.W.2d 721, 725 (1949); *Forecki v. Kohlberg*, 237 Wisc. 67, 295 N.W. 7, 10[2] (1940). Of course, any member of the public who suspects an attorney of

The point is without merit.

The judgment is affirmed.

STEWART, P. J., and REINHARD, J., concur.

breach of professional conduct can report him or her to the bar association or other organization having jurisdiction over attorneys. This does not mean that one who has never been the client of an attorney can come into court in an action in which he or she is an interested party and seek to disqualify the opposing attorney for an ethical violation. *Murchison v. Kirby*, supra, 201 F.Supp. at 123. This Court sees no ethical violation by respondent's attorney.